IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OMRON ELECTRONIC COMPONENTS LLC,        )
                                        )
        Plaintiff/Counter-Defendant,    )
                                        )
    v.                                  )    No.  09 C 953
                                        )
THINKLOGICAL, INC., formerly known      )
as LOGICAL SOLUTIONS, INC.,             )
                                        )
        Defendant/Counter-Plaintiff.    )

## MEMORANDUM OPINION

Before the court is the motion of plaintiff/counter-defendant Omron Electronic Components LLC ("Omron") to dismiss the counterclaim of defendant/counter-plaintiff Thinklogical, Inc. ("Thinklogical") pursuant to Federal Rule of Civil Procedure 12(b)(6).  Also before the court is Thinklogical's motion to strike Omron's reply brief or to convert the motion to dismiss into a motion for summary judgment.  For the reasons explained below, Omron's motion is granted, and Thinklogical's motion is denied.

## BACKGROUND

This is a breach of contract action in which Omron alleges that Thinklogical failed to pay for optical sub-assemblies ("OSAs") that it delivered to Thinklogical in 2008.  Omron also claims that Thinklogical wrongfully cancelled a number of orders for OSAs that it had placed with Omron.  Omron's complaint contains two counts

for breach of contract. Count I is based on Thinklogical's alleged failure to pay for goods sold and delivered pursuant to a series of purchase orders, and Count II is based on Thinklogical's alleged cancellation of orders. Omron seeks $849,772.50 in compensatory damages on Count I and $1,661,467.50 in compensatory damages on Count II plus prejudgment interest and reasonable attorney's fees.

Thinklogical, for its part, alleges that Omron knowingly shipped "defective" transmitting optical sub-assembly parts ("TOSA parts") and "useless" receiving optical sub-assembly parts ("ROSA parts") through November 2008. (Countercl. ¶ 25.) Thinklogical's counterclaim contains five counts: breach of contract (Count I); breach of express warranty (Counts II and III); breach of the implied warranty of merchantability (Count IV); and breach of the implied warranty of fitness for a particular purpose (Count V).

Omron now moves to dismiss Thinklogical's counterclaim. Thinklogical moves to strike Omron's reply brief or to convert the motion to dismiss into a motion for summary judgment.

## **DISCUSSION**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). Under federal notice-pleading standards, a complaint need not contain "detailed factual allegations," but it must have more than mere "labels and

conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obligated to provide the factual grounds of his entitlement to relief, and a "formulaic recitation" of the elements of a claim will not do. Id. The complaint must contain sufficient facts to raise a plaintiff's right to relief above a "speculative" level, id. at 555, and the claim must be "plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). When evaluating a motion to dismiss a complaint, we must accept as true all factual allegations in the complaint, but not its legal conclusions. Id. at 1949-50.

The counterclaim alleges the following facts. Thinklogical designs and manfactures technically sophisticated communications products. Its products are used in "sensitive applications" by public and private corporations as well as governmental intelligence and defense agencies. (Countercl. ¶ 5.) In 2002, Thinklogical began communicating with one of Omron's predecessor companies, Blaze Network Products ("BNP"), to determine whether BNP could supply optical components for Thinklogical's products. BNP shipped samples of its TOSA and ROSA parts for Thinklogical's evaluation. In response to Thinklogical's inquiry, BNP's CEO, Brian Peters, represented that the mean time between failures

("MTBF") for the parts exceeded 90,000 hours; in other words, the parts would not fail for approximately ten years.

In reliance on the product samples, Peters's description of the parts, and Peters's representation about the MTBF, Thinklogical entered into a series of contracts to purchase the parts from BNP. In January 2004, BNP was purchased by Aduro, Inc. ("Aduro"); Aduro, in turn, was purchased by Omron in January 2006. Peters continued his employment with these successor companies.

Following Omron's acquisition of Aduro, Omron assured Thinklogical that it would continue to supply TOSA and ROSA parts of the same, if not superior, quality as those supplied by its predecessors. In reliance on these representations and others, Thinklogical decided to continue purchasing the parts from Omron. Omron knew that Thinklogical used the parts as components for its line of fiber-optic-based video extender products, which are used in "performance-sensitive military, defense intelligence, and air traffic control applications," Countercl. ¶ 16, and it knew that Thinklogical was relying on Omron's skill and/or judgment to furnish suitable parts for the line. Omron also knew that Thinklogical needed the parts to complete orders for its products and that it had no alternative supplier for the parts.

In 2007, Thinklogical's customers began to experience malfunctions in the video extender products they had purchased from Thinklogical. The malfunctions were caused by the failure of the

TOSA parts supplied by Omron.  Thinklogical promptly notified Omron of these failures.  The same year, Omron determined that the TOSA parts were subject to failure as a result of defective lasers installed in the parts, and it "notified Thinklogical that it was experiencing problems with its production line equipment that could cause premature TOSA Parts laser failure following installation on Thinklogical's clients' premises."  (Id. ¶ 22.)  In the spring of 2008, Omron assured Thinklogical that it would remedy the laser defects, and in October 2008, Omron again admitted that a laser defect existed in the TOSA parts, "but advised Thinklogical that it would continue shipping the defective products to Thinklogical for up to one more year."  (Id. ¶ 24.)  Despite Thinklogical's repeated requests, Omron was "unwilling or unable to remedy the laser-related defect in its TOSA Parts, and knowingly continued to ship defective TOSA Parts and useless ROSA Parts to Thinklogical through November of 2008."  (Id. ¶ 25.)

According to Thinklogical, Omron breached the series of contracts that the parties entered into in 2008, as well as the express warranty relating to the MTBF of the parts and the express warranty that Omron's parts would conform to the samples.  There is also a claim that Omron breached the implied warranty of merchantability and the implied warranty of fitness for the particular purposes for which Thinklogical used the parts.  Thinklogical alleges that it has performed all conditions required

of it under the terms of the parties' contracts, and that as a result of Omron's conduct, it has sustained significant damages, including the loss of customers, goodwill, and reputation in the industry as well as the costs of repair and replacement, design, and travel. Compensatory damages equal to the difference between the value of the parts as delivered and the value of the parts had they been manufactured and delivered "as warranted" are sought. Thinklogical also seeks incidental damages, consequential damages, costs incurred as a result of the breach, and the costs of this action.

Omron contends that Thinklogical's claims are barred by the terms of the series of contracts between the parties, which are attached to Omron's complaint and its motion to dismiss. Those terms state, in pertinent part:

**IV. WARRANTY AND LIMITATION**

1. <u>Warranty</u>: Seller's exclusive warranty is that the Products will be free from defects in materials and workmanship for a period of twelve months from the date of sale by Seller (or such other period expressed in writing by Seller). SELLER MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, ABOUT ALL OTHER WARRANTIES, NON-INFRINGEMENT, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PRODUCTS.

2. <u>Buyer Remedy</u>: Seller's sole obligation hereunder shall be to replace (in the form originally shipped with Buyer responsible for labor charges for removal or replacement thereof) the non-complying Product or, at Seller's election, to repay or credit Buyer an amount equal to the purchase price of the Product; provided that there shall be no liability for Seller or its affiliates unless Seller's analysis confirms that the Products were handled, stored, installed, and maintained and not

subject to contamination, abuse, misuse, or inappropriate
modification. Return of any Products by Buyer must be
approved in writing by Seller before shipment.

3. <u>Limitation on Liability</u>: SELLER AND ITS AFFILIATES
SHALL NOT BE LIABLE FOR SPECIAL, INDIRECT, INCIDENTAL OR
CONSEQUENTIAL DAMAGES, LOSS OF PROFITS OR PRODUCTION OR
COMMERCIAL LOSS IN ANY WAY CONNECTED WITH THE PRODUCTS,
WHETHER SUCH CLAIM IS BASED IN CONTRACT, WARRANTY,
NEGLIGENCE OR STRICT LIABILITY. FURTHER, IN NO EVENT
SHALL LIABILITY OF SELLER OR ITS AFFILIATES EXCEED THE
INDIVIDUAL PRICE OF THE PRODUCT ON WHICH LIABILITY IS
ASSERTED.

. . .

**VI. MISCELLANEOUS**

. . .

4. <u>Amendment</u>: These Terms constitute the entire
agreement between Buyer and Seller relating to the
Products, and no provision may be changed or waived
unless in writing signed by the parties.

(Mot. to Dismiss, Ex. A; Compl., Ex. A.) The terms contain an

Illinois choice-of-law provision.

Omron points out that the contract contains an integration

clause stating that the terms constitute the entire agreement

between the parties. According to Omron, all of the counts of

Thinklogical's counterclaim should be dismissed because IV.2, the

contract provision limiting the buyer's remedy to replacement of

the goods or repayment of (or credit for) the purchase price of the

goods, prohibits Thinklogical from recovering each of the kinds of

relief it seeks. Omron also argues that Thinklogical's express and

implied warranty claims in Counts II-V are precluded by the

provision disclaiming all warranties except the twelve-month

warranty set forth in the terms.  Omron cites to the Illinois Uniform Commercial Code, which states that "[r]emedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation or limitation of damages and on contractual modification of remedy (Sections 2-718 and 2-719)." 810 ILCS 5/2-316.  Section 2-718 allows liquidated damage clauses where the amount involved is reasonable in light of the surrounding circumstances.  Section 2-719 provides:

> Contractual Modification or Limitation of Remedy.
> (1) Subject to the provisions of subsections (2) and (3) of this Section and of the preceding section on liquidation and limitation of damages,
>
> (a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and
>
> (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
>
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.
>
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

810 ILCS 5/2-719.

"A claim is properly dismissed if a limitation of remedies provision in a contract prohibits the claimant from recovering the damages sought." Factory Mut. Ins. Co. v. Bobst Group Inc., No. 02 C 283, 2002 WL 1263991, at *3 (N.D. Ill. June 5, 2002) (applying the Illinois UCC); see also Stepan Co. v. Winter Panel Corp., 948 F. Supp. 802, 809-10 (N.D. Ill. 1996). Moreover, "[i]t is well settled that parties may exclude or limit warranties that exist under the UCC." Bobst Group, 2002 WL 1263991, at *3; see also Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd., 946 F. Supp. 1358, 1363 (N.D. Ill. 1996).

Thinklogical does not deny that the terms set forth above are the terms of the relevant contracts. But it contends that the motion to dismiss should be denied because the contractual terms are unconscionable and because Omron acted in bad faith. Regarding bad faith, Thinklogical cites to two cases, one applying New York law and one applying New Hampshire law, for the proposition that contractual limitations on liability are unenforceable when a defendant has acted in bad faith. Thinklogical cites no cases applying Illinois law. Moreover, the cases from other jurisdictions are distinguishable because they involved the defendant's knowing concealment of defects in its product. Here, Thinklogical does not allege that Omron knowingly concealed defects in the TOSA parts; rather, it alleges that Omron gave notice of the problems that could cause premature failure of the TOSA parts and

assurances that it would remedy the defects. Thinklogical also does not allege any facts that allow us to draw a reasonable inference that Omron knowingly concealed the defects or that, as Thinklogical asserts in its response brief, Omron failed to act with "honesty in fact." (Resp. at 9.) Thinklogical's allegation that Omron "advised Thinklogical that it would continue shipping the defective products to Thinklogical for up to one more year," Compl. ¶ 24, does not allow us to draw such an inference, nor does the allegation that Omron was "unwilling or unable" to remedy the defect, Compl. ¶ 25.

Thinklogical also argues that the facts alleged "establish" that the warranty disclaimers and remedy limitations are unconscionable and thus unenforceable and that it should have an opportunity to conduct discovery on unconscionability or to present its position at an evidentiary hearing. We are unpersuaded. The Illinois Supreme Court has stated that there are two types of unconscionability. Procedural unconscionability "refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it," and the court considers disparity of bargaining power and whether a party was deprived of a "meaningful choice" in forming the contract. Kinkel v. Cingular Wireless LLC, 857 N.E.2d 250, 264 (Ill. 2006). Substantive unconscionability concerns

whether the actual terms of the contract are so one-sided as to "oppress or unfairly surprise" a party. Id. at 267.

Thinklogical does not specify which type of unconscionability is implicated by its allegations, but it seems to suggest a bit of both. We say "suggest" because Thinklogical fails to explain how it has alleged facts sufficient to permit a reasonable inference that the contract terms at issue were unconscionable. It merely argues: "At the time the contracts at issue 'were made' (2008), Omron was fully aware of the circumstances of its commercial dealings with Thinklogical, and the situation in which Thinklogical found itself. Giving effect to Omron's terms and conditions under these circumstances would be oppressive, unfair, and unjust." (Resp. at 11 (citing Countercl. ¶¶ 14-25).)

Thinklogical cites no relevant Illinois law in support of its argument. And the facts alleged in the counterclaim do not permit the reasonable inference that Thinklogical, a business entity, was deprived of a meaningful choice in entering into the contracts with Omron, or that the terms of the contract were oppressive or unfairly surprised Thinklogical. Indeed, Thinklogical alleges that it continued to enter into contracts with Omron after being apprised of the problems with Omron's production line; it also alleges that the parties (or their predecessors) had a long-standing business relationship. Twombly requires more than a mere claim that the provisions at issue "may" be unconscionable; rather,

Thinklogical must provide a plausible basis for that claim. See Great West Cas. Co. v. Volvo Trucks N. Am., Inc., No. 08 CV 2872, 2009 WL 588432, at *4-5 (N.D. Ill. Feb. 13, 2009) (rejecting plaintiff's argument that it should be able to take discovery to determine whether certain contract terms were unconscionable where plaintiff had failed to make allegations sufficient to raise a plausible claim of unconscionability). It has failed to do so.

The limitation-of-remedies provisions in the contracts between the parties prohibit Thinklogical from recovering the relief it seeks. In addition, the warranty disclaimers in the contracts preclude Thinklogical's express and implied warranty claims in Counts II, III, IV, and V. Thinklogical cites no Illinois authority for its argument that "bad faith" can render unenforceable the contractual limitations on liability, and in any event, it fails to sufficiently plead bad faith. It also fails to sufficiently plead unconscionability. Therefore, Omron's motion to dismiss the counterclaim will be granted.

Our final order of business is Thinklogical's motion to strike the reply brief filed by Omron in support of the motion to dismiss. In its reply, Omron discusses e-mails between Thinklogical and Omron in which Thinklogical purportedly instructed Omron to continue shipping certain parts. Omron also discusses terms and conditions of contracts between Thinklogical and Aduro, Omron's predecessor. These e-mails and terms are attached to the reply

brief.  Thinklogical contends that these are matters and documents extraneous to the pleadings that should not be considered on a motion to dismiss.  We agree; these materials are not referred to in the complaint, and they are not central to plaintiff's claim.  See generally Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) (documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to plaintiff's claim).  We did not find it necessary to review these materials in order to decide the motion to dismiss, and we disregarded those portions of Omron's reply brief referring to the materials.  Other portions of Omron's reply were helpful, though, so we decline to strike the reply in its entirety as requested by Thinklogical.  Furthermore, it makes little sense to convert the motion into a motion for summary judgment.  Accordingly, Thinklogical's motion to strike the reply brief or to convert the motion will be denied.

## **CONCLUSION**

The motion of Omron Electronic Components LLC to dismiss the counterclaim of Thinklogical, Inc. [24] is granted, and the counterclaim is dismissed in its entirety (Counts I, II, III, IV, and V).  The motion of Thinklogical to strike Omron's reply brief or to convert the motion to dismiss into a motion for summary judgment [35] is denied.

A status hearing is set for December 16, 2009 at 11:00 a.m. to discuss the next steps in the case.


DATE:        December 9, 2009


ENTER: _____
        John F. Grady, United States District Judge